UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALAN OBERC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-01382 |
| | § | |
| BP PLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court are defendants'—BP America Inc., BP Products North America Inc. and BP Exploration & Production Inc. (collectively "BP"); Willis Group, LLC, DonWat GP, LLC, Donovan & Watkins, LP and Donovan & Watkins Legal Solutions, LLC (collectively "DW"); and Kirkland & Ellis, LLP ("K&E") and Gary Chyi ("Chyi") (collectively "Kirkland Defendants")—motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Nos. 37, 40, and 35). The plaintiff, Alan Oberc ("Oberc"), has submitted individual responses to each defendant's motion (Docket Nos. 51, 53, and 46). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS BP's motion in its entirety, GRANTS in part and DENIES in part DW's motion, and GRANTS Kirkland Defendants' motion in its entirety.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit arises out of Oberc's six weeks of employment reviewing and coding documents in connection with the BP Deepwater Horizon oil spill litigation.

Oberc, an attorney licensed and practicing in Michigan, sent his resume to DW and expressed an interest in document review projects in Houston, Texas. After an extended period

of email correspondence, an interview and discussions on the conditions of employment, Oberc was hired by DW and staffed on BP's Deepwater Horizon document review project. K&E was the lead law firm for the litigation and Chyi was its on-site representative overseeing the document review process.

During the course of his employment, Oberc came to believe that he was providing above average services, but was not able to fully function as an attorney because of the number of guidelines and protocols that constrained his ability to use judgment while reviewing documents. He encountered numerous issues at the work place such as computer system glitches, continuous modification of instructions and protocols, and in one instance, he witnessed a physical altercation.

Six weeks into Oberc's tenure, he was called into a meeting with Chyi, BP representatives and DW representatives. During that meeting, Chyi accused Oberc of failing to follow instructions because Oberc had incorrectly coded a document. Oberc had previously been counseled for incorrectly coding other documents. After the meeting, Oberc met with a DW representative to discuss overtime pay. Later that evening, Oberc received an email from a different DW representative informing him that his employment was terminated and instructing him not return to the worksite the following day.

As a result, Oberc filed this action for breach of contract, wrongful discharge, negligent performance of contract, violation of the Fair Labor Standards Act (FLSA) overtime pay provision, violation of the FLSA's prohibition on retaliatory discharge, tortious interference with contractual relations, tortious interference with business relations, negligence, gross negligence, defamation, negligent infliction of emotional distress[1] and intentional infliction of emotional

---

[1] The parties agree that the state of Texas does not recognize a claim for negligent infliction of emotional distress; the claim is dismissed as to all defendants.

distress. This matter is before the Court pursuant to its federal question and diversity jurisdiction; the state law claims are governed by the laws of Texas.

## III. CONTENTIONS OF THE PARTIES

### A. BP's Contentions

BP contends that Oberc's breach of contract claim fails because (1) Oberc has not pled facts that establish BP entered into a contract with him, (2) it is barred by the statute of frauds, and (3) Oberc has not pled facts to establish that BP was a party to a contract that only permitted for-cause termination. BP next argues that Oberc's wrongful discharge and negligent performance of contract claims fail as well. The common law wrongful discharge claim fails because that cause of action is generally not available in Texas. The negligent performance claim fails because Oberc does not allege any injury other than the termination itself.

BP also argues that Oberc's FLSA overtime pay and retaliation claims, defamation claim and intentional infliction of emotional distress claims are equally unavailing. With respect to the FLSA claims, BP contends that Oberc has not pled facts that establish any of the four-factor "economic realities" test such that he can demonstrate that BP was his employer.[2] Regarding the defamation claim, BP argues the action is barred by the statute of limitations, and further, that Oberc cannot meet the elements for a claim of defamation by self-publication. Finally, BP contends that the intentional infliction of emotional distress claim cannot be maintained because there is no "gap to fill" such that the action is available, and even if it were available, Oberc cannot establish the elements of the claim.

### B. DW's Contentions

DW contends that Oberc's breach of contract claim fails because he has not pled facts sufficient to rebut the presumption that he was an at-will employee. Specifically, DW claims that

---

[2] In its motion to dismiss, BP also adopts DW's reasons for dismissing the FLSA claims.

Oberc's alleged term of employment was too vague and indefinite. Moreover, even if there were a contract, because it was not signed by DW it is barred by the statute of frauds. DW also argues that Oberc's wrongful discharge and negligent performance of contract claims fail because Texas is an at-will employment jurisdiction and there was no contract.

DW next argues that neither FLSA claim can be maintained. The FLSA overtime pay claim fails because Oberc was an exempt attorney engaged in the practice of law. The FLSA retaliation claim fails because Oberc has not pled facts that establish the "clear and detailed complaint to employer" element of the claim.

Finally, DW argues that the defamation and intentional infliction of emotional distress claims also fall short. The defamation claim is barred by the statute of limitations, and alternatively, Oberc cannot establish the elements of a "self-publication in the future" theory. The intentional infliction of emotional distress claim fails because there is no "gap to fill" such that the action is available, and even if it were available, Oberc cannot establish the elements of the claim.

### C.    Kirkland Defendants' Contentions

Kirkland Defendants argue that both the tortious interference with contractual relations and tortious interference with prospective business relations claims are barred by the statute of limitations. They next argue that the negligence and gross negligence claims fall short because they owed no duty to Oberc, and therefore, could not have been negligent. Finally, Kirkland Defendants contend that the defamation and intentional infliction of emotional distress claims fail. They advance the same arguments as DW with respect to both claims.[3]

---

[3] Technically, DW incorporated Kirkland Defendants' arguments regarding the defamation and intentional infliction of emotional distress claims into their motion. Therefore, in the interest of precision, it is more accurate to say that DW advances the same arguments as Kirkland Defendants with respect to both claims.

**D.     Oberc's Contentions**

Oberc advances a number of arguments on the breach of contract claim. With respect to BP, Oberc argues that he did enter into a contract with BP because DW was acting as BP's agent and that the claim is not barred by the statute of frauds because there was an electronic signature. Further, during the course of negotiations, BP manifested its intent to restrict its termination rights. With respect to DW, Oberc argues that the parties agreed to the duration of the project as the term of employment, and the "a year to three years" language was only an approximation of the expected duration.

Regarding the wrongful discharge and negligent performance claims, Oberc argues that BP never stated the employment was at-will and that BP was negligent in training and evaluating him, all of which resulted in emotional distress. With respect to DW, Oberc's argument seems to be that his deficient training by DW supports both the breach of contract and negligent performance claims.

With respect to the FLSA claims, Oberc argues that BP was his employer because BP used DW as its hiring agent, and further, that he satisfies the Fifth Circuit's four-factor economic realities test. Moreover, because he was not salaried and only performed routine work that required no legal analysis or lawyerly judgment, he was not working as an attorney such that he was exempt from the FLSA overtime pay requirement. Oberc also contends that because he made his complaint during a scheduled meeting with a DW representative and stated that he planned to file a grievance with the U.S. Department of Labor, the complaint constitutes a protected activity under the FLSA.

Regarding the tortious interference claims against Kirkland Defendants, Oberc maintains that the action is not barred by the statute of limitations because the claims are not based solely

on Kirkland Defendants' defamatory statements, but also encompass their "ruse" and efforts to have him terminated.

Oberc next argues that the negligence and gross negligence claims are viable because Kirkland Defendants did in fact owe him a duty because there is a common law duty that requires tortfeasors to exercise reasonable care in performing services that the tortfeasor should recognize as necessary for the protection of third parties.

Oberc contends that his defamation action against all defendants is not barred by the statute of limitations because he has properly alleged a self-publication in the future theory and can meet the elements of that claim. Further, he argues that his self-publication of the statement to the recruiter in Chicago did not become ripe until "three to six months" (when he was ultimately not hired by the recruiter for a document review project) after he made the statement.

Finally, with regard to his intentional infliction of emotional distress claim, Oberc argues that he makes the claim because there is a "gap to fill." Specifically, he claims there is no cause of action available to redress the injury he suffered as a result of the defendants conspiring to terminate his employment. Moreover, he argues that not only is the action available to him, he can meet the elements of the claim because the conspiracy constitutes extreme and outrageous conduct, and he has sufficiently alleged that he suffered extreme emotional distress.

## IV.  STANDARD OF REVIEW

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d

229, 230 (5th Cir. 1991)). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly*, 550 U.S. at 563 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

V.     ANALYSIS AND DISCUSSION

   A.    **Breach of Contract, Wrongful Discharge and Negligent Performance of Contract (Counts I & II)**

Whether Oberc's breach of contract, wrongful discharge and negligent performance of contract claims can be maintained against BP turn on whether he had an enforceable employment contract with BP. Whether those same claims can be maintained against DW turn on whether Oberc was an at-will employee. Because the Court holds that Oberc has not pled facts sufficient to establish that he entered into a contract with BP nor pled facts sufficient to establish that he was not an at-will employee of DW, all three claims fail.

In Texas, absent existing contractual or statutory limitations, an employee is at-will, and may be terminated at any time, with or without cause. *See Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723-24 (Tex. 1990). An employee who challenges his at-will status must show an express agreement that alters the at-will status of his employment. *See Totman v. Control Data Corp.*, 707 S.W.2d 739, 744 (Tex. App.—Fort Worth 1986, no writ). The at-will status may be altered only by clear and specific terms to the contrary. *See Schroeder v. Texas Iron Works*, 813 S.W.2d 483, 489 (Tex. 1991) (*overruled on other grounds*).

Oberc's complaint does not allege facts, sufficient to survive a motion to dismiss, that he entered into an employment contract with BP. Aside from his allegation that the DW representative submitted his "resume [to BP] for consideration," every other fact alleged relating to his negotiations and hiring for the document review project exclusively involved DW representatives. Although Oberc often states that he entered into a contract with BP and that he was happy BP was considering him for employment, these assertions do not constitute facts. Texas is an at-will employment state. Without an employment contract that clearly limits the

grounds for discharge, claims for breach of contract, wrongful discharge and negligent performance of contract are not viable. As such, these claims are dismissed as to BP.

Oberc's complaint fails to allege facts that he entered into an employment contract with DW whereby DW manifested an intent to alter the presumption of at-will employment. The DW representative's alleged statement that the BP project was "expected to last a year to three years" is not a term of definite duration. Further, the language of the email does not suggest that DW assented to employing Oberc until the completion of the BP document review project. Even assuming that it is standard industry practice to employ a contract attorney until the completion of a document review project, the alleged statement did not limit the time or manner in which the parties could end their employment relationship.[4] Because Oberc has not pled facts rebutting the presumption of at-will employment, the Court is bound to conclude that he was an at-will employee. "Employment for an indefinite term may be terminated at will and without cause." *Winters*, 795 S.W.2d at 723. Accordingly, Oberc's breach of contract, wrongful discharge and negligent performance of contract claims fail as to DW.

B. **FLSA Overtime Pay & Retaliation (Counts III & IV)**

The FLSA requires employers to pay employees at an overtime rate not less than one and one-half times the employee's regular rate for every hour over forty hours worked in a given week. 29 U.S.C. § 207(a)(1). However, certain professional employees are exempt from the FLSA's overtime provision. 29 U.S.C. § 213(a)(1). Attorneys engaged in the practice of law are considered professional employees, and therefore, employers do not have to pay them overtime wages. 29 C.F.R. § 541.304(a)(1).

i. **As Against BP**

---

[4] The Court does not purport to decide when the employment relationship began.

To ascertain whether an entity is an employer, courts must consider whether the entity: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.2010)). Although the absence of one factor will not necessarily be dispositive in making the determination, the absence of all factors is fatal to the inquiry. *Id.* at 357.

Oberc has not alleged *facts*, sufficient to overcome a motion to dismiss, that BP was his employer. The entirety of the complaint shows that Oberc's discussions regarding his hiring and firing, the conditions of his employment and his wage, were with DW representatives. Moreover, there is a dearth of facts evidencing that any entity, other than DW, maintained employment records. Oberc almost exclusively bases his claim on bald assertions and legal conclusions ("BP was involved with the selection and hiring process when they requested Mr. Oberc's resume for consideration.") ("These BP instructions were required to be followed and they were further issued to BP employees by DW. They were part of DW's project management duties.") ("Although, DW was identified as the employer according to [Texas Workforce Commission's] data, Mr. Oberc contended [sic] that characterization and stated that DW was an administrative agent to BP for hiring and payroll."). The few facts pled in Oberc's lengthy complaint are not sufficient to establish that BP was his employer. Because BP was not Oberc's employer it cannot be liable for FLSA violations. Accordingly, both FLSA claims are dismissed.

    ii.  **As Against DW**

It is undisputed that DW employed Oberc. However, the parties do contest whether Oberc was engaged in the practice of law such that he is an exempt professional employee and not covered by the overtime provision. The parties also contest whether Oberc engaged in any protected activity such that he is covered by the anti-retaliation provision.

### a. Overtime Pay

The regulations promulgated by the Labor Secretary make clear that the salary and primary duty requirements of 29 C.F.R. § 541.300 are not applicable to attorneys engaged in the practice of law. 29 C.F.R. § 541.304(d). Therefore, Oberc's arguments that he was not a salaried employee and that his primary duty as a DW employee did not require advanced knowledge are irrelevant.

Attorneys engaged in document review must assess the relevance and responsiveness of each document, along with any privilege issues presented. The mere fact that the task may be routine or constrained by guidelines does not make it any less "legal." The facts as alleged in Oberc's complaint demonstrate that he used legal judgment during the six weeks he reviewed documents in connection with the Deepwater Horizon litigation. He pointed out documents that had been coded as non-responsive that were in fact responsive. He used discernment while he was a member of the redaction team. He also reviewed documents to ascertain whether they contained privileged information.

The Court holds that Oberc was engaged in the practice of law while employed by DW. As such, Oberc was an exempt professional under the FLSA and DW was not required to pay overtime wages.

### b. Retaliation

The FLSA prohibits an employer from discharging an employee because he engages in activity protected under the statute. 29 U.S.C. 215(a)(3). The Fifth Circuit recognizes that an informal, internal complaint can constitute protected activity. *Hagan v. Echostar Satellite, LLC* 529 F.3d 617, 626 (5th Cir. 2008). "Not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Id.* However, an informal complaint concerning the illegality of a practice would qualify if it puts the employer on notice that the employee is asserting rights protected by the FLSA and seeking to invoke the statute's protection. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011).

Oberc alleges that during his "meeting with a DW representative who came in from headquarters" he asked whether "overtime pay rates for working beyond 40 hours per week" would be paid. He also stated that he planned to file "a complaint with the Labor Department" because he had not been paid overtime as he was entitled "according to the law." Oberc further alleges that he was terminated later that evening. That factual content certainly supports a claim for retaliation in violation of the FLSA for which Oberc may be entitled to relief. Accordingly, DW's motion to dismiss this claim is denied.

  C. **Tortious Interference Claims (Counts V & VI)**

"A two-year statute of limitations typically applies to" claims of tortious interference. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146 (5th Cir. 2007) (citing TEX. CIV. PRAC. & REM. CODE § 16.003). "However, when allegedly defamatory statements form the sole basis for a plaintiff's tortious interference claim, defamation's one-year statute of limitations applies." *Id.* at 146-47 (citing *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Oberc was terminated in June 2011. He filed this suit in May 2013. If the general tortious interference statute of limitations applies, Oberc's claims are timely. If defamation's one year statute of limitations applies, the claims are barred. Kirkland Defendants argue that Oberc's tortious interference claims are predicated on Chyi's allegedly defamatory statements. The Court agrees.

Oberc's claims for tortious interference with contractual relations and tortious interference with prospective business relations are based on Chyi's allegedly defamatory statements to BP about Oberc's work product and Chyi's efforts to have Oberc terminated. Oberc believes that because he alleged Chyi was involved in a "ruse," the aim of which was to get him fired, he has overcome Kirkland Defendants' argument. However, the gravamen of Oberc's complaint is Chyi's allegedly defamatory statements. Oberc alleges that Chyi told BP and DW that Oberc was not a good worker. He further alleges that Chyi went to great lengths to have Oberc terminated because he believed Oberc was not a good worker. Because Oberc's claims for tortious interference are "inextricably intertwined with and dependent upon [his] claim for [defamation], the one-year limitation period" applies. *Martinez*, 864 S.W.2d at 776.

### D. Negligence and Gross Negligence (Count VII)

A claim of negligence requires Oberc to show that Kirkland Defendants owed him a legal duty, they breached that duty, and he suffered harm as a result. *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). A finding of negligence is a prerequisite to a finding of gross negligence. *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Therefore, the threshold inquiry regarding claims of negligence and gross negligence is whether a duty existed. In Texas, "[t]he existence of a duty is a question of law." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). If the court determines

there is no duty, the inquiry regarding negligence ends. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

Oberc's claim is that Kirkland Defendants negligently trained him and that negligent training led to his termination. Oberc acknowledges that Kirkland Defendants did not employ him and their primary duty was to their client, BP. However, Oberc contends that by training him, Kirkland Defendants owed him a duty to provide competent training. He bases the imposition of this duty on two Texas appellate cases, *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) and *Lowe's Home Centers, Inc. v. GSW Marketing, Inc.*, 293 S.W.3d 283 (Tex. App.—Houston [14th Dist.] 2009, no pet.). He maintains those cases stand for the proposition that a tortfeasor must exercise reasonable care when performing services that the tortfeasor should know will be necessary for the protection of third parties.

The cases cited by Oberc are inapposite. *Torrington* was a wrongful death suit against a helicopter manufacturer and the manufacturer of the bearings used in the helicopter; the suit was based on a helicopter crash caused by a failed bearing. *Lowe's* was a negligence suit against a company that built and maintained a store display that struck and injured a store employee. Those cases rely on Restatement (Second) of Torts, section 342A(b):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking…

Oberc does not allege that he has suffered any physical harm as a result of Kirkland Defendant's negligence. Furthermore, the cause of action described in *Torrington* and *Lowe's* is only available to an injured third-party. Here, Oberc is the party to whom services were rendered; he is not the injured third-party those cases contemplate. Finally, Oberc has not pointed to any authority evidencing that this principle has been recognized in Texas in the employment context.

Because Oberc has not pled facts that show Kirkland Defendants' owed him a duty, no claim for negligence lies. Because there is not a viable claim for negligence, there can be no claim for gross negligence. Accordingly, both claims are dismissed.

### E. Defamation (Counts VIII & IX)

In Texas, defamation claims are subject to a one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.002(a). To the extent that Texas recognizes a self-publication defamation claim, it occurs only "(1) if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature; and (2) if the circumstances indicated that communication to a third party was likely." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 499 (Tex. App.—Dallas 2003, no pet.). However, two Texas appellate courts have allowed self-publication claims to proceed when only the second element has been satisfied. *See Chasewood Constr. Co. v. Rico*, 696 S.W.2d 439, 445 (Tex. App.—San Antonia 1985, writ ref'd n.r.e.); *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 701-02 (Tex. Civ. App.—Corpus Christi 1980 writ ref'd n.r.e.). Importantly, defamation by self-publication requires an actual publication. *Gonzales v. Levy Strauss & Co.*, 70 S.W.3d 278, 283 (Tex. App.—San Antonio 2002, no pet.) ("Speculation about what [former employees] may reveal to prospective employers and the action taken by those employers based on the information does not support a defamation claim.").[5]

Under this standard, Oberc's defamation claim fails as to all defendants. Oberc filed his complaint in May 2013. To the extent his claim is based on the statements made at the time of

---

[5] In *Chasewood*, a contractor suddenly fired a subcontractor for theft and ordered the subcontractor from the worksite. The subcontractor repeated the charge of theft to his employees in response to their questions about why they were leaving the premises. The subcontractor subsequently brought a defamation suit. In *First State Bank*, the president of a bank was terminated for making unauthorized loans and a bond claim was instituted against him for the amount of the unauthorized lending. In subsequent interviews with other banks, the former president was asked if a bond claim had ever been filed against him (standard practice in the industry for those with bondable positions) and he responded truthfully. In both cases, the publication occurred before suit was brought.

15 / 17

his termination in June 2011, it is time-barred. To the extent his claim is based on the fact that he repeated those statements when he spoke with a recruiter in February 2012, it is time-barred. Because no other allegedly defamatory statement has been made, and a claim for defamation will only lie where the statement has actually been published (and not where it may be published at some unknown future date), Oberc has not stated a claim of defamation for which relief could be granted. As such, it is dismissed as to all defendants.

### F. Intentional Infliction of Emotional Distress (Count X)

To establish a claim for intentional infliction of emotional distress, Oberc must plead facts showing "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's action caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). However, "a claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). In other words, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

Oberc's complaint asserts claims for breach of contract, wrongful discharge, negligent performance of contract, FLSA overtime pay, retaliation in violation of FLSA, tortious interference with contractual relations, tortious interference with potential business relations, negligence, gross negligence, defamation, and intentional infliction of emotional distress. Although there seems to be no gap for his emotional distress claim to fill, Oberc argues that the

claim covers the alleged conspiracy that existed between the defendants whereby any of their faults and shortcomings were blamed on Oberc, and that eventually resulted in his termination. Ignoring the fact that many of the causes of action are based on Oberc's termination, Oberc has pled no *facts* that demonstrate the existence of a conspiracy. Even assuming that the intentional infliction of emotional distress claim would be available to address this alleged gap, the point remains that Oberc's assertion that a conspiracy existed amongst the defendants is not supported by any factual allegations. Accordingly, his intentional infliction of emotional distress claim is dismissed as to all defendants.

## VI.   CONCLUSION

Based on the foregoing discussion, the Court GRANTS BP's motion in its entirety, GRANTS in part and DENIES in part DW's motion, and GRANTS Kirkland Defendants' motion in its entirety.

It is so **ORDERED**.

SIGNED on this 13th day of November, 2013.

_____
Kenneth M. Hoyt
United States District Judge